# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| TRADING TECHNOLOGIES, INC., ) | |
| ) | |
| Plaintiff/Counter-Defendant, ) | |
| ) | No. 05 C 1079 |
| v. ) | |
| ) | Wayne R. Andersen |
| REFCO GROUP LTD, LLC, et al., ) | District Judge |
| ) | |
| Defendants/Counter-Plaintiff. ) | |

## MEMORANDUM, OPINION AND ORDER

This case is before the Court on the plaintiff's motion to dismiss defendants' first and second counterclaims and strike the affirmative defense of patent misuse. For the following reasons, the plaintiff's motion is granted in part and dismissed in part.

## BACKGROUND

Plaintiff, Trading Technologies International, Inc. ("TT") and defendants REFCO Group Ltd., LLC, REFCO LLC, and REFCO EasySolutions, LLC (collectively referred to herein as "REFCO") provide software capable of entering orders for futures contracts traded on the nation's futures exchanges. TT's primary assets are its patented software, which it licenses to numerous firms. REFCO also sells software. However, REFCO's business is much broader than simply providing software solutions. REFCO is a futures brokerage firm that provides software, hardware, and networking support to its customers, individuals and firms engaged in trading futures contracts. Accordingly, REFCO is both a competitor to and a previous customer of TT. When REFCO was a TT customer, REFCO clients could choose between TT software solutions and REFCO software

solutions. According to REFCO's counterclaims, its software, while less expensive than TT's, contains additional features and is gaining popularity with REFCO clients who previously used TT's software.

Prior to the commencement of this litigation, TT initiated several other patent infringement suits which, along with the present suit, are consolidated for common issues with *Trading Technologies Int'l, et al., v. eSpeed, Inc.*, No 04 C 5312. TT attempted to avert litigation by offering the "big four" exchanges, which are the Chicago Board of Trade ("CBOT"), the Chicago Mercantile Exchange ("CME"), EUREX, and Euronet, an agreement entitling it to 5 cents for each trade of a futures contract forever, or more precisely, 2.5 cents from each side engaged in the exchange of a futures contract. After none of the exchanges accepted this offer, TT brought the same deal to its customers such as REFCO. TT proposed that REFCO and its competitors pay 2.5 cents per executed contract forever in exchange for unlimited use and unfettered access to TT's software.

REFCO refused this proposal; shortly thereafter TT exercised its right to terminate, without cause, the licencing agreement under which REFCO marketed TT's software. REFCO's counterclaim lists two firms, Goldenberg, Hehmeyer & Co. ("Goldenberg, Hehmeyer") and Kingstree Trading LLC ("Kingstree"), that supposedly settled with TT on terms which presumably require them to pay TT royalty payments for all trades, regardless of whether they are using TT's technology.

REFCO uses TT's own statements to demonstrate that TT has "captured more than a 50% volume share" of the market for electronic trading software and "has built itself into an integral piece of the futures industry." No mention, however, is made as to how TT has captured that market share. As pled in REFCO's counterclaim, TT is the owner of several patents and is entitled to control the

2

market for those products that are covered by its patents. The only two instances of TT allegedly profiting from, controlling, or adversely impacting the market for products not covered by its patents are the settlements reached with Goldenberg, Hehmeyer and Kingstree. REFCO fails to assert that Goldenberg, Hehmeyer and/or Kingstree are involved in a significant portion of the relevant market.

## STANDARD OF REVIEW

Pursuant to Federal Rule of Civil Procedure 12(b)(6), when deciding a motion to dismiss, this Court must assume the truth of all facts alleged in the complaint, construing the allegations liberally and viewing them in the light most favorable to the plaintiff. *Jones v. General Electric Co.*, 87 F.3d 209, 211 (7th Cir.1996); *Wilson v. Formigoni*, 42 F.3d 1060, 1062 (7th Cir.1994). Federal notice pleading only requires the plaintiff to set out in its complaint a short and plain statement of the claim that will serve to provide fair notice to the counter-defendants. *See Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit*, 507 U.S. 163, 168 (1993). The plaintiff is not required to plead all the facts in support of its claims, as a short and plain statement of the claim will suffice. *See Trevino v. Union Pacific Railroad Co.*, 916 F.2d 1230, 1234 (7th Cir. 1990); *American Nurses' Ass'n v. Illinois*, 783 F.3d 716, 723 (7th Cir. 1986).

## DISCUSSION

TT asserts that REFCO's affirmative defense of patent misuse should be stricken as insufficiently pled and its antitrust and contract counterclaims dismissed for failure to state a claim. TT's argument is simple; it had an absolute right to terminate its licencing agreement with REFCO and breached no contractual duty, violated no antitrust law, and engaged in no conduct giving rise to a claim of patent misuse in doing so. Essentially, TT posits it was entitled to take every action REFCO accused it of taking, including demanding payment in perpetuity of royalties for the use of

3

products not covered by its patents..

I.   *Breach of Contract Claim*

The licencing agreement TT entered into with REFCO contained a clause allowing either party to terminate the relationship without cause. REFCO concedes this means TT has no obligation to show good faith in terminating the licensing agreement. However, REFCO claims this does not entitle TT to engage in conduct amounting to "bad faith."

Under Illinois law, an implied covenant of good faith and fair dealing is included in every contract unless expressly disavowed. *Martindell v. Lake Shore Nat'l Bank*, 154 N.E.2d 683, 690 (Ill. 1958); *Dayan v. McDonald's Corp.*, 81 Ill.Dec. 156, 466 N.E.2d 958 (Ill. 1984) (a covenant of good faith and fair dealing is implied into every contract unless expressly disavowed). Illinois courts have observed that "[p]roblems involving the obligation of good faith and fair dealing generally arise where one party to a contract is given broad discretion in performance." *Northern Trust Co. v. VIII South Michigan Associates*, 276 Ill.App.3d 355, 367 (Ill.App. 1st Dist. 1995). This is because the covenant requires that a party who is given broad discretion under the terms of a contract not act unreasonably or arbitrarily so as to thwart the expectations of the parties at the time of contracting. *Cromeens, Holloman, Sibert, Inc v. AB Volvo*, 349 F.3d 376, 395 (7th Cir. 2003).

The Illinois Supreme Court recently reiterated that the covenant of good faith and fair dealing is a guide to construction, not an independent cause of action. *Voyles v. Sandia Mortgage Corporation*, 196 Ill.2d 288 (Ill. 2001). *Voyles* involved allegations that the defendant mortgage company intentionally reported false and defamatory information to credit reporting agencies in an effort to compel the plaintiff to capitulate to its terms in paying a mortgage. The *Voyles* court found that the defendant did nothing wrong in reporting the information it did to the credit reporting

agencies. However, the Illinois high court first addressed, and rejected, the plaintiff's claim that defendant's conduct gave rise to a cause of action under the implied covenant of good faith and fair dealing. *Id.*

The *Voyles* court pointed to another Illinois Supreme Court case, *Cramer v. Insurance Exchange Agency*. 221 Ill.Dec. 473 (Ill. 1996). *Cramer* stressed that the covenant of good faith and fair dealing "is not generally recognized as an independent source of duties giving rise to a cause of action in tort" before carving out a narrow exception to that rule when an insurer beaches its duty to defend a lawsuit brought against an insured. *Id.* *Voyles* reiterated that *Cramer* created a very narrow exception, reinforced that the covenant was merely an aid to construction, and observed that "[a] cause of action for violation of a duty of good faith and fair dealing would, as a practical matter, add little to this or any plaintiff's remedial repertoire." *Voyles*, 196 Ill.2d at 295. After the Illinois Supreme Court's repeated assertions that the covenant does not create an independent cause of action, the Seventh Circuit has predicably refused to invoke the covenant as anything more than an aid to construction. *See, e.g., APS Sports Collectibles, Inc. v. Sports Time, Inc.*, 299 F.3d 624, 628 (7th Cir. 2002) (accepting defendant's argument that under Illinois law, "the covenant of good faith and fair dealing is not an independent source of duties for parties to a contract, but instead an implied term that guides the construction of explicit terms in an agreement.").

The Seventh Circuit, in construing analogous Wisconsin law, has stated, "[a] contract at will may be terminated for any reason (including bad faith) or no reason, without judicial review; the only exception is a termination that violates a fundamental and well-defined public policy as evidenced by existing law." *Kumpf v. Steinhaus*, 779 F.2d 1323, 1326 (7th Cir.1985) (internal quotations and

citations omitted). However, this was said in reviewing a tort claim, not a breach of contract claim. No recent Illinois or Seventh Circuit case has allowed a breach of contract claim to rely solely on the covenant of good faith and fair dealing.

REFCO seemingly acknowledged the rule that the covenant of good faith and fair dealing is a guide to construction and not an independent cause of action for tort by suing for breach of contract. However, REFCO is still seeking to maintain an independent cause of action under the covenant. REFCO's counterclaim states "[a]ll contracts have an implied term and covenant of good faith and fair dealing, and the parties are subject to this duty. TT has breached each [contract] by issuing in bad faith notices purporting to terminate those agreements." The present case differs from *Voyles* in that REFCO has claimed, and we assume for the present motion it is true, that TT had a "bad faith" motive for ending its relationship with REFCO which may have violated a well defined public policy against potentially monopolistic behavior. (We note that whether TT's conduct amounted to a violation of the antitrust laws is a more complicated question involving the probable impact its actions portend, which is discussed below.) However, that does not justify this Court creating an independent cause of action that is currently unrecognized in Illinois law. Accordingly, REFCO's counterclaim for breach of contract is dismissed.

*II. Antitrust Counterclaims*

REFCO's second counterclaim alleges that TT violated Section 2 of the Sherman Act, 15 U.S.C. § 2, by "attempting to monopolize the market for order entry software for electronically trading futures on major futures exchanges, and submarkets thereof." REFCO's antitrust claim relies primarily upon TT's attempt to implement a global settlement or "solution" whereby it obtains 2.5

6

cents from each side to a futures transaction forever, regardless of whether the means used to order and execute the contract are covered by TT's patents or occur during the lifetime of its patent.

To adequately plead a cause of action for attempted monopolization, a plaintiff must allege "(1) specific intent to achieve monopoly power, (2) predatory or anticompetitive conduct directed to accomplishing this unlawful purpose, and most important for purposes of this case, (3) a dangerous probability that the attempt to monopolize will be successful." *Indiana Grocery, Inc. v. Super Valu Stores, Inc.* 864 F.2d 1409, 1413 (7th Cir. 1989). "The 'dangerous probability' element of the attempted monopolization offense reflects the well-established notion that section 2 of the Sherman Act governs single-firm conduct only when it threatens actual monopolization." *Id.* However, "the Sherman Act's prohibition against attempted monopolization does not require that the attempt in fact ripen into an actual monopoly. It is the attempt which is the offense." *Lektro-Vend Corp. v. Vendo Co.* 660 F.2d 255, 270 (7th Cir. 1981). To answer the question of whether there is a dangerous probably that a party will obtain a result forbidden by the antitrust laws we look to "the alleged offender's ability to achieve the forbidden result, his intent, and the nature of his overt actions." *Id.* Consistent with the underlying principles of antitrust laws, "[t]he ultimate concern is the firm's actual or threatened impact on competition in the relevant market." *Id.*

In *Rosenthal Collins Group, LLC v. Trading Technologies*, No. 05 C 4088, with which this case is consolidated for common issues, the plaintiff's antitrust claims against TT were dismissed. In that case, the court found that "[a]cceptance or probable acceptance of the 2.5 cent proposal must occur before plaintiff has standing to pursue an antitrust violation based on the proposal. Therefore, defendant's 2.5 cent proposal cannot be the basis for [antitrust damages]." *Rosenthal Collins Group, LLC v. Trading Technologies Intern., Inc,.* 2005 WL 3557947, 4 (N.D.Ill. 2005) (Moran, J.).

7

REFCO asks us to distinguish the decision in the *Rosenthal Collins* case on the grounds that TT actually terminated REFCO's contract. Thus, unlike *Rosenthal Collins* a concrete harm occurred. This, we are unwilling to do. While REFCO may have suffered a concrete harm, which was absent in *Rosenthal Collins*, there remains a complete lack of probable monopolization. REFCO has merely pled that two firms, neither of which are among the "big four" exchanges, have accepted TT's offer. In fact, the instant spate of litigation and REFCO's refusal to cave to TT's demands demonstrate that TT is unlikely to obtain any monopoly, unless it is entitled to do so under the patent laws. The threat REFCO complains of, acceptance of an industry-wide demand that market participants pay 2.5 cents per trade forever, simply has not come to bear and REFCO pleads no facts indicating TT is likely to obtain such a result through prohibited behavior. As such, REFCO has failed to state a claim for attempted monopolization.

### III. Patent Misuse

REFCO claims patent misuse as an affirmative defense, relying primarily on TT's attempt to obtain royalties for every futures trade forever thereby impermissibly broadening the "physical or temporal scope" of its patent. It is well established that royalty agreements that apply to transactions not covered by the patent may, depending on a variety of factors surrounding the negotiations, constitute an antitrust violation and patent misuse. *See, e.g., Zenith Radio Corp. v. Hazeltine Research, Inc.*, 395 U.S. 100, 135, 89 S.Ct. 1562, 1583 (1969) ("We hold that conditioning the grant of a patent license upon payment of royalties on products which do not use the teaching of the patent does amount to patent misuse."). As stated in *Rosenthal Collins*, "[a]lthough a finding of an antitrust violation requires a finding of patent misuse, the same is not true in reverse. Patent misuse is considered a broader wrong than antitrust violation and a patent misuse claim is easier to

prove than an antitrust violation." Accordingly, we deny TT's motion to strike REFCO's affirmative defense of patent misuse.

## CONCLUSION

For the reasons set forth above, TT's motion to dismiss counterclaims and strike the affirmative defense of patent misuse [27-1] is denied in part and granted in part. REFCO's counterclaims are dismissed and its affirmative defense of patent misuse remains.

It is so ordered.

Wayne R. Andersen
United States District Court

Dated: March 23, 2006