IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| Trading Technologies International, Inc., <br> Plaintiff, <br> vs. <br> eSpeed, Inc., eSpeed International, Ltd., <br> Ecco LLC, and Ecco Ware Ltd., <br> Defendants. | ) ) ) ) ) ) ) | No. 04 C 5312 <br> Judge Moran |
| Trading Technologies International, Inc., <br> Plaintiff, <br> vs. <br> Refco Group Ltd., LLC, et al., <br> Defendants. | ) ) ) ) ) ) | No. 05 C 1079 <br> Judge Andersen |
| Rosenthal Collins Group, LLC, <br> Plaintiff-Counterclaim Defendant, <br> vs. <br> Trading Technologies International, Inc., <br> Defendant-Counterclaimant. | ) ) ) ) ) ) | No. 05 C 4088 <br> Judge Moran |
| Trading Technologies International, Inc., <br> Plaintiff, <br> vs. <br> GL Consultants, Inc. and GL Trade SA, <br> Defendants. | ) ) ) ) ) ) | No. 05 C 4120 <br> Judge Gottschall |
| Trading Technologies International, Inc., <br> Plaintiff, <br> vs. <br> CQGT, LLC and CQG, Inc., <br> Defendants. | ) ) ) ) ) ) | No. 05 C 4811 <br> Judge Moran |
| Trading Technologies International, Inc., <br> Plaintiff, <br> vs. <br> FuturePath Trading, LLC, <br> Defendant. | ) ) ) ) ) ) | No. 05 C 5164 <br> Judge Shadur <br><br> All Cases Assigned to Judge <br> Moran For Common Issues |

## MEMORANDUM OPINION AND ORDER

In this collection of cases, a dispute over an appropriate protective order has taken an inordinate amount of time and has prompted massive briefing. It is past time to bring that dispute to a conclusion. In doing so, it may be helpful to sketch out where we are and how we got there.

An initial dispute between Trading Technologies International, Inc. (TT) and eSpeed, Inc. (eSpeed) related to Steven Borsand's access to highly confidential material. Borsand, in-house counsel for and an officer of TT, is primarily a litigator, but he does have oversight responsibilities regarding TT's intellectual properties, and some involvement in its patent prosecutions. We determined on September 23, 2004, that the risk of inadvertent misuse of confidential material was not great enough to justify the restrictions eSpeed proposed. Although we recognized that the cases went both ways, we then believed (and continue to believe) that attorneys take their obligations to restrict the use of discovery material seriously, and that spelling out the restrictions is generally sufficient. A year thereafter Magistrate Judge Brown reached the opposite conclusion in TT v. Refco Group Ltd., LLC (Refco), 05 C 1079. TT has appealed that determination.

In January 2006, in TT v. FuturePath Trading, LLC, 05 C 5164 (FuturePath), the defendant attacked not only the access by Michael Ryan, a vice-president and general counsel of TT, but by any outside litigator who was involved in patent prosecutions. It proposed that there be two types of highly restricted material: "attorneys' eyes only" and "patent prosecution material." Shortly thereafter, GL Consultants, Inc., and related defendants in TT v. GL Consultants, Inc., 05 C 4120, together with FuturePath, took a similar position (they will be collectively referred to as GLFP). Judge Shadur was handling my call at the time and he provided for a briefing schedule in early March. That led CQG, Inc. and CQGT, LLC, to take the position in TT v. CQG, Inc., 05 C 4811 (CQG), that further restrictions were necessary, particularly a restriction on access unless the person seeking the material has a need to know. It also urged transparent monitoring and joined GLFP in their position on Borsand, Ryan, and outside counsel. In the meantime, Rosenthal Collins Group, LLC (RCG), in RCG v TT, 05

C 4088, had agreed to a protective order like that in place with eSpeed, except that implicit restrictions on Borsand expanding his patent prosecution activities were made explicit.

On March 7 and March 10, 2006, we discussed possible approaches to protective orders. I then tentatively agreed with the notion of a two-tiered designation: "attorneys' eyes only" and "patent prosecution material," respecting highly confidential information. That was a change from the eSpeed and RCG orders, primarily because we were going to have attorneys who had considerable knowledge about emerging technology in the entire industry. That, it seemed, increased the risk of inadvertent use of restricted information in patent prosecutions.[1] Otherwise, the model was to be the RCG order. At both status conferences we discussed what was meant by involvement in patent prosecutions.

We hoped that would bring closure to the matter. It did not. On July 6, 2006, TT, GLFP and CQG, all presented versions of a protective order. In reviewing the differences in those versions we are guided by several personal views. A litigator who has access to highly confidential information should not be involved in the preparation of patent applications, but once an application is filed the ability to change and expand is very limited. We go beyond the RCG order solely because of the unique industry-wide circumstances here, and the designation is an extraordinary designation. (Incidentally, we reject the notion advanced by some that licensing and settlement negotiations are necessarily part of competitive decision-making, leading to the exclusion of participating attorneys from access to information. The settlement of patent cases, usually by licensing, is part of litigation.)

The July 6 versions do reduce the scope of the disputes. The differences are set forth in GLFP's "Blueprint," Exhibit B, and we use that as a format for decision. Because the

---

[1] Intentional improper use of restricted information is covered by the highly confidential designation.

designation is an extraordinary one, we adopt TT's version at page 1. We also adopt TT's version at page 2, believing it sufficient that a firm has a duty to see that its agents and employees conform to the firm's obligations. We conclude, for now, that one in-house counsel shall be designated. We are influenced to some extent by our understanding that Michael Ryan is not a patent attorney and is not actively involved in the litigations. Thus we fail to see why he needs to know what defendants may be doing. We adopt TT's version on page 4. RCG did have eight, but that was in response to concessions it made, which no longer apply. We adopt TT's version on pages 5 and 6, except that the exclusion shall extend until one year after the conclusion of the proceedings. The election must be made prior to receipt of the information by that person, although others affiliated with that person may earlier access that information if qualified to do so, in order to advise the person as to what the election should be. We conclude that a person electing not to engage in patent prosecutions should still be able to attend an interview at the Patent Office or by telephone, and to participate in an opposition proceeding in a foreign country – not uncommon roles of an advocate, although that person must be ever mindful of the overriding obligation to use confidential information solely for the purposes of the litigation. That person can generally advise other attorneys of overall patent strategy, but cannot recommend or suggest specific amendments to claims or changes in disclosures. And we think the obligations should be confined to patent applications seeking to claim a graphical user interface for manual order entry. The likelihood of inadvertent use of restricted information by a litigator, when the information relates to patents that are largely irrelevant to the litigation, is small, indeed. Finally, we adopt TT's version on page 8, not because we disagree with what defendants propose, but because that is already implicit – a party can always seek additional relief if the circumstances so warrant.

The protective order shall apply to all cases (including <u>Refco</u>), except <u>TT v. eSpeed</u>. That case is on a different track, the parties have apparently operated without particular difficulties under a different order and their discovery has about concluded. We see no reason to change the rules for those parties so late in the game.

                                                                                  JAMES B. MORAN
                                                              Senior Judge, U. S. District Court

July 13, 2006.