IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| Trading Technologies International, Inc., <br> Plaintiff, <br> vs. <br> eSpeed, Inc., eSpeed International, Ltd., <br> Ecco LLC, and Ecco Ware Ltd., <br> Defendants. | ) ) ) ) ) ) ) ) | No. 04 C 5312 <br> Judge Moran |
| Trading Technologies International, Inc., <br> Plaintiff, <br> vs. <br> Refco Group Ltd., LLC, et al., <br> Defendants. | ) ) ) ) ) ) ) | No. 05 C 1079 <br> Judge Andersen |
| Rosenthal Collins Group, LLC, <br> Plaintiff-Counterclaim Defendant, <br> vs. <br> Trading Technologies International, Inc., <br> Defendant-Counterclaimant, | ) ) ) ) ) ) ) | No. 05 C 4088 <br> Judge Moran |
| Trading Technologies International, Inc., <br> Plaintiff, <br> vs. <br> GL Consultants, Inc. and GL Trade SA, <br> Defendants. | ) ) ) ) ) ) ) | No. 05 C 4120 <br> Judge Gottschall |
| Trading Technologies International, Inc., <br> Plaintiff, <br> vs. <br> CQGT, LLC and CQG, Inc., <br> Defendants. | ) ) ) ) ) ) ) | No. 05 C 4811 <br> Judge Moran |
| Trading Technologies International, Inc., <br> Plaintiff, <br> vs. <br> FuturePath Trading, LLC, <br> Defendant. | ) ) ) ) ) ) ) | No. 05 C 5164 <br> Judge Shadur <br><br> All Cases Assigned to Judge <br> Moran For Common Issues |

MEMORANDUM OPINION AND ORDER

Plaintiff Trading Technologies International, Inc. ("TT") brought separate patent infringement suits against defendants eSpeed, Inc., ITSEcco Holdings Limited, Ecco LLC, and Ecco Ware Limited (collectively "eSpeed"); GL Consultants Inc. ("GL"); CQGT, LLC and CQG, Inc. (collectively "CQG"); and FuturePath Trading, LLC ("FuturePath"). In anticipation of a similar suit, Rosenthal Collins Group, Inc. ("RCG") brought a declaratory

judgment action against TT.[1] After a three-day Markman hearing[2] and consideration of an avalanche of briefs and exhibits, the court construed the disputed claims of U.S. Patent nos. 6,772,132 ('132 patent) and 6,766,304 ('304 patent) ("TT Markman I"). Soon after the entry of the court's claim construction order, TT filed this motion for clarification of the scope of the claim construction, or in the alternative, for reconsideration.[3] For reasons stated herein, plaintiff's motion for clarification or reconsideration is denied in part.

## BACKGROUND

Plaintiff's nearly identical patents relate to computer software used for electronic trading in the futures industry. Specifically, plaintiff patented a "method and system for reducing the time it takes for a trader to place a trade when electronically trading on an exchange, thus increasing the likelihood that the trader will have orders filled at desirable prices and quantities" ('132, Abstract; '304, Abstract). To achieve such results, plaintiff's patents combine a common static price axis with a dynamic display of prices, and include a single action order entry region.[4] Although our TT Markman I opinion construed a number of claims, plaintiff only takes issue with two: "static" and "plurality."

Defendants view plaintiff's motion primarily as a motion to reconsider. Although plaintiff's motion does not explicitly state that it brings such a motion pursuant to Federal Rule of Civil Procedure 59(e), such is our assumption. Plaintiff disputes such a characterization: "TT's motion is a motion to clarify in the first instance because each side is interpreting the Court's construction of 'static' differently" (TT's reply, at 1). Motions for reconsideration are rarely granted – they serve a narrow function and must be supported by a showing of

---

[1] In this order, we refer to all defendants and RCG, collectively, as "defendants."

[2] Markman v. Westview Instruments, Inc., 52 F.3d 967 (Fed.Cir.1995), aff'd 517 U.S. 370 (1996).

[3] TT Markman I was entered on October 31, 2006. Plaintiff filed this motion on November 20, 2006.

[4] For a full background and explanation of the patents, see TT Markman I.

extraordinary circumstances. <u>Mahurkar v. C.R. Bard, Inc.</u>, 2003 WL 22844237, *1 (N.D.Ill.2003) (citing <u>Caisse Nationale de Credit Agricole v. CBI Indus., Inc.</u>, 90 F.3d 1264, 1269 (7th Cir.1996)). Motions to reconsider are solely designed to "correct manifest errors of law or fact or to present newly discovered evidence." <u>Id.</u> (citing <u>Publishers Resource, Inc. v. Walker-Davis Publications, Inc.</u>, 762 F.2d 557, 561 (7th Cir.1985)). Because motions to reconsider face a higher standard of review, and plaintiff has persuasively argued the parties' differing interpretations of this court's Markman ruling, we give plaintiff the benefit of the doubt and view its motion primarily as one to clarify.

## DISCUSSION

We begin with plaintiff's primary concern – our previous construction of "static." In <u>TT Markman I</u>, we construed "common static price axis" ('304 patent) as "a line comprising price levels that do not change positions unless a manual re-centering command is received and where the line of prices corresponds to at least one bid value and one ask value." 2006 WL 3147687, at *4. Similarly, we construed "static display of prices" ('132 patent) as "a display of prices comprising price levels that do not change positions unless a manual re-centering command is received." <u>Id.</u> Plaintiff assures us that it does not take issue with our construction, but urges clarification that the claim element would be met "if the accused product ever embodies the claimed element, irrespective of how long it does so or whether such a product also has the capacity to act in an uncovered manner" (TT's motion, at 1).

Analysis of a patent infringement claim is a two-step process. First, we construe the claims, an issue of law for the court to determine. <u>Warner-Lambert Co. v. Teva Pharmaceuticals USA, Inc.</u>, 418 F.3d 1326, 1340 (Fed.Cir.2005). Second, we compare the accused product or process to the properly construed claims, an issue of fact for the fact-finder. <u>Id.</u> Plaintiff's patent infringement claim will be successful "only where the accused product or

process contains each limitation of the claim, either literally or under the doctrine of equivalents." *Id.* (citing Deering Precision Instruments, L.L.C. v. Vector Distrib. Sys., Inc., 347 F.3d 1314, 1324 (Fed.Cir.2003)). Defendants argue that plaintiff is conflating the two steps. By arguing that defendants' products may still infringe on plaintiff's patents under a part-time infringement theory, eSpeed suggests that TT is putting the cart before the horse. eSpeed contends that "[t]he theory of part-time infringement is not a canon of claim construction and does not override the plain meaning of the claim or the disclosures in the specification and file history.... It is the claim construction, which is derived from the plain meaning of the claim and intrinsic evidence, that dictates whether the theory of part-time infringement has any relevance to the infringement analysis. Under the plain meaning of the claim and the Court's claim construction, part-time infringement is inapplicable because a price axis that moves other than through a manual re-centering command is not a static one" (eSpeed response, at 5).

We agree with defendants that the analysis of part-time infringement is, as the name implies, one of comparison – the second step of patent infringement analysis. Because there seems to be some confusion on the construction of the term "static," however, we will address the merits of plaintiff's arguments. Specifically, we will address whether the term "static" in "common static price axis" and "static display of prices" requires a permanent state of lack of movement.

Plaintiff's arguments center on two overlapping principles. First, plaintiff contends that Claim 1 of each patent-in-suit is an open claim, designated by the term "comprising" in its preamble. Plaintiff asserts that such a claim does not preclude the existence of additional unrecited features of an accused product or process. Second, plaintiff asserts that part-time infringement – infringement for any length of time, regardless of whether the accused product or process also has times of non-infringement – covers its claims. Although plaintiff's briefs

imply that the two arguments are part of the same theory, we are not so sure. TT's "comprising" argument seems to assert that automatic re-centering is an unrecited additional feature that is made possible by the fact that the price axis was already in a static condition (TT reply, at 2). We read that to mean that the automatic re-centering is separate from the static claim limitation. TT's part-time infringement theory, on the other hand, seemingly suggests that the mere presence of a static price axis – regardless of whether it moves at some time – is still infringing (*id.*, at 1). In our view, such an argument suggests that automatic re-centering takes an accused product or process out of the purview of plaintiff's patent protection, but only for the split second that it is moving, so that the time when the accused product's price axis is not moving, it is still infringing. Ultimately, however, plaintiff's arguments both suggest that the addition of movement does not preclude a finding of infringement.

We begin by assessing plaintiff's "comprising" argument. To do so, we must lay out Claim 1 of each patent-in-suit. Patent '304, Claim 1, reads:

> A method for displaying market information relating to and facilitating trading of a commodity being traded in an electronic exchange having an inside market with a highest bid price and a lowest ask price on a graphical user interface, the method *comprising*:
> [1] dynamically displaying a first indicator in one of a plurality of locations in a bid display region, each location in the bid display region corresponding to a price level along a *common static price axis*, the first indicator representing quantity associated with at least one order to buy the commodity at the highest bid price currently available in the market;
> [2] dynamically displaying a second indicator in one of a plurality of locations in an ask display region, each location in the ask display region corresponding to a price level along the *common static price axis*, the second indicator representing quantity associated with at least one order to sell the commodity at the lowest ask price currently available in the market;
> [3] displaying the bid and ask display regions in relation to fixed price levels positioned along the *common static price axis* such that when the inside market changes, the price levels along the *common static price axis* do not move and at least one of the first and second indicators moves in the bid or ask display regions relative to the *common static price axis*;
> [4] displaying an order entry region comprising a plurality of locations for receiving commands to send trade orders, each location

> corresponding to a price level along the *common static price axis*; and
> [5] in response to a selection of a particular location of the order entry region by a single action of a user input device, setting a plurality of parameters for a trade order relating to the commodity and sending the trade order to the electronic exchange.

Patent '132, Claim 1, reads:

> A method of placing a trade order for a commodity on an electronic exchange having an inside market with a highest bid price and a lowest ask price, using a graphical user interface and a user input device, said method *comprising*:
> [1] setting a preset parameter for the trade order
> [2] displaying a market depth of the commodity, through a dynamic display of a plurality of bids and a plurality of asks in the market for the commodity, including at least a portion of the bid and ask quantities of the commodity, the dynamic display being aligned with a *static display of prices* corresponding thereto, wherein the *static display of prices* does not move in response to a change in the inside market;
> [3] displaying an order entry region aligned with the *static display prices* comprising a plurality of areas for receiving commands from the user input devices to send trade orders, each area corresponding to a price of the *static display of prices*; and
> [4] selecting a particular area in the order entry region through single action of the user input device with a pointer of the user input device positioned over the particular area to set a plurality of additional parameters for the trade order and send the trade order to the electronic exchange.

Plaintiff correctly notes that the addition of unclaimed unrecited elements does not traditionally defeat a finding of infringement where the patent uses an open transitional phrase such as "comprising." Free Motion Fitness, Inc. v. Cybex Int'l, Inc., 423 F.3d 1343, 1347 (Fed.Cir.2005); CollegeNet, Inc. v. ApplyYourself, Inc., 418 F.3d 1225, 1235 (Fed.Cir.2005); Gillette Co. v. Energizer Holdings, Inc., 405 F.3d 1367, 1371 (Fed.Cir.2005). Therefore, when the term "comprising" appears in the preamble of the claim, as it does here, it is generally read to mean including, but not limited to, the following elements. Nazomi Communications, Inc. v. Arm Holdings, PLC, 403 F.3d 1364, 1370 (Fed.Cir.2005) ("'Comprising' is often synonymous with 'including'"); Crystal Semiconductor Corp. v. TriTech Microelectronics Int'l., Inc., 246 F.3d 1336, 1348 (Fed.Cir.2001) ("In the parlance of patent law, the transition 'comprising'

creates a presumption that the recited elements are only a part of the device, that the claim does not exclude additional, unrecited elements").

Plaintiff's "comprising" argument, however, fails. Unlike many of the cases cited by plaintiff, its patents' claims include a limitation of a static or non-moving condition.[5] Any movement takes a product or process outside the scope of plaintiff's claim. *See* W.E. Hall Co., Inc. v. Atlanta Corrugating, LLC, 370 F.3d 1343 (Fed.Cir.2004) (where an accused product failed to meet each of the elements or limitations required by the claim language itself, a partially open transition term could not enlarge the scope of the claim); Moleculon Research Corp. v. CBS, Inc., 793 F.2d 1261 (Fed.Cir.1986) (the term "comprising" did not affect the scope of the particular structure recited within the method claim's step). Unlike Smith & Nephew, Inc. v. Ethican, Inc., 276 F.3d 1304 (Fed.Cir.2002), failure to include movement of the static price axis in plaintiff's claims would not exclude a reasonable practice taught in the specification of the patent. And unlike CollegeNet, Inc., 418 F.3d at 1235, failure to include movement of the static price axis in plaintiff's claims would not be inconsistent with the problems the invention sought to redress. Rather, including movement of the static price axis would work against the patents' stated purpose: "If a trader intends to enter an order at a particular price, but misses the price because the market prices moved before he could enter the order, he may lose hundreds, thousands, even millions of dollars" ('304, 2:61-65, '132, 2:57-61). It is a basic principle of patent law that an infringing use of a patented method or claim requires practice of every limitation of the claim or every step of the method. Zoltek Corp. v.

---

[5]We have already determined that "static" means non-moving. TT Markman I, 2006 WL 3147697. In addition to the plain and ordinary meaning we focused on in TT Markman I, we also note several instances in the intrinsic record suggesting such a construction. *See, e.g.,* '304, 7:65-67 ("The values in the price column are static; that is, they do not normally change positions unless a re-centering command is received..."); Amendment and Reply under 37 CFR § 1.111 (eSpeed Markman exhibits, Exh. E, at eS0000064873) (same); Notice of Allowability (*id.*, Exh. OO, at eS0000064919 ) ("The static display, directed to the commodity price, does not change").

U.S., 442 F.3d 1345, 1359 (Fed.Cir.2006). Addition of the term "comprising" does not remove the limitations that are present in the claim. Power Mosfet Technologies, L.L.C. v. Siemens AG, 378 F.3d 1396, 1409 (Fed.Cir.2004). Therefore, we do not read "comprising" as allowing some movement of the static price axis. Our earlier constructions remain, and we clarify that the price axis never changes positions unless by manual re-centering or re-positioning.

Once we determine that the term "comprising" does not allow for any movement of the static price axis, it is easy to dispose of plaintiff's part-time infringement argument. Plaintiff correctly points out that "an accused product that sometimes, but not always, embodies a claimed method nonetheless infringes." Bell Communications Research, Inc. v. Vitalink Communications Corp., 55 F.3d 615, 622 (Fed.Cir.1995). The statute governing patent infringement, 35 U.S.C. § 271(a) (2003), also suggests that any infringement – even *de minimis* infringement – is actionable; the level of infringement is a question of damages, not liability. Embrex, Inc. v. Service Engineering Corp., 216 F.3d 1343, 1352-53 (Fed.Cir.2000) (Rader, J., concurring). Where, however, the claim limitation itself – here, a static condition – requires permanency, any movement (outside of manual re-centering or re-positioning) negates one of the specified claim limitations. Therefore, introduction of such movement takes an accused device out of the protection of plaintiff's patents.

The situation at hand is different from those cases finding part-time or *de minimis* infringement. For example, the court in Seal-Flex, Inc. v. Athletic Track and Court Const., 172 F.3d 836, 845 (Fed.Cir.1999) found infringement where defendant's customary method was non-infringing, and defendant only used plaintiff's patented method one time. Or, in SmithKline Beecham Corp. v. Apotex Corp., 403 F.3d 1331, 1341-42 (Fed.Cir.2005), the Federal Circuit affirmed the district court's determination that trace amounts of the patented compound found in the infringing device would infringe under the construction of the claims.

Or, in Embrex, 216 F.3d 1343, the court found infringement when defendants engaged in testing for commercial purposes using plaintiff's patented technology. In this case, in order to literally infringe, defendants must practice all elements of plaintiff's patented technology. Zoltek Corp., 442 F.3d at 1359. Therefore, any movement of the static price axis leaves accused technology outside the protection of plaintiff's patents.

Plaintiff makes various other arguments and points to various extrinsic evidence in support of its position that any period of a static condition falls within our construction of "common static price axis" and "static display of prices." None is persuasive. We have already determined the influence of the phrase "ensure fast and accurate execution" in the claim construction. Free Motion Fitness, a case cited by plaintiff to support its argument that the patents did not guarantee accuracy, tells us "to scrutinize the intrinsic evidence in order to determine the most appropriate definition" of a claim term. 423 F.3d at 1348-49. That is exactly what we did – we turned to the specification, which suggested that the patented technology would "ensure fast and accurate execution" to construe "common static price axis" and "static display of prices." Thus, we need not alter our construction. And the extrinsic evidence presented – in light of our construction, based almost entirely on intrinsic evidence – will not change our construction.

Finally, plaintiff requests that we reconsider our construction of the term "plurality," in the '132 patent. In our previous order we construed "display of a plurality of bids and plurality of asks," and "displaying the bid and ask display regions," as "a display of one or more bids and one or more asks." TT Markman I, 2006 WL 3147697, at *9. Suggesting that "[i]t is well established in patent law that the term of art 'a plurality' calls for 'more than one,' and thus precludes 'one' from the definition" (TT's motion, at 14), TT argues that we erred in our construction. None of the defendants addressed plaintiff's contentions and, therefore, we

assume none has a strong disagreement with plaintiff's construction.[6] As the term "plurality" has been previously construed in patents to mean "more than one," "at least two," and "two or more" (Bilstad v. Wakalopulos, 386 F.3d 1116, 1123 (Fed.Cir.2004); ResQNet.com, Inc. v. Lansa, Inc., 346 F.3d 1374, 1383 (Fed.Cir.2003); York Products, Inc. v. Central Tractor Farm & Family Center, 99 F.3d 1568, 1575 (Fed.Cir.1996); NCR Corp. v. Palm, Inc., 217 F.Supp.2d 491, 508 (D.Del.2002)), and the ordinary meaning of plurality is "[t]he state or fact of being plural" (WEBSTER'S II NEW COLLEGE DICTIONARY (2001)), we grant plaintiff's motion to reconsider. We construe "display of a plurality of bids and plurality of asks" as "a display of more than one bid and more than one ask."

## CONCLUSION

For reasons as stated above, we deny in part plaintiff's motion to reconsider.

JAMES B. MORAN
Senior Judge, U. S. District Court

Feb. 20, 2007.

---

[6] CQG includes an unenlightening footnote on the subject. It reads, in relevant part: "To the extent that the Court decides it is appropriate to reconsider 'plurality' as it is used in terms such as 'dynamic display of a plurality of bids and a plurality of asks,' CQG asserts that its proposed construction of the greater term properly reflects the meaning of plurality as subsumed by the larger term."